UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMANDA L. KRATZER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 1:19-CV-184 RLM ) |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant, | ) |

OPINION AND ORDER

Amanda Kratzer seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 423 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated in open court at yesterday's oral argument and summarized below, the court reverses the Commissioner's decision and directs the Commission to award benefits.

Ms. Kratzer was 32 in June 2013, the alleged onset of disability.[1] She applied for SSD based on a variety of physical and mental impairments, including vertigo, headaches, and related neurological symptoms. Her applications were denied initially, upon reconsideration, and following an administrative hearing in January 2018. The ALJ concluded at that hearing

---

[1] At the administrative hearing, Ms. Tanner amended her onset date to June 1, 2014.

that Ms. Kratzer had the residual functional capacity to perform sedentary work with limitations, including her past relevant work as a office manager/dispatcher/safety manager, dispatcher, and insurance sales agent and, alternatively, other work that existed in significant numbers in the national economy, and therefore wasn't disabled within the meaning of the Act from June 2014 through May 31, 2018. More specifically, the ALJ found that:

- Ms. Kratzer had severe impairments: history of electrocution with residual effects, headaches, sleep apnea, and obesity. (20 CFR § 404.1520(c))

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1.

- Ms. Kratzer's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."

- The opinion of treating source Dr. Ahmad was entitled to great weight; the opinion of treating source Dr. Hilburn was entitled to some weight; the third party report of the claimants mother, Brenda Wright, was entitled to little weight; and the state agency determination was entitled to partial weight.

- Ms. Kratzer had the residual functional capacity to perform sedentary work with the following additional limitations- she: could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; must avoid unprotected heights, moving mechanical parts, and operating a motor vehicle; could tolerate occasional exposure to wetness; and could tolerate moderate noise in the work environment.

- Based on the vocational expert's testimony, Ms. Kratzer could perform her past relevant work as an office manager/dispatcher/safety manager;

dispatcher; and insurance sales agent. The ALJ also found that, in the alternative, Ms. Kratzer could perform other work that existed in significant numbers in the national economy, including charge account clerk (DOT 205.367-014; 101,000 jobs nationally), information clerk (237.367-046; 90,000 nationally), and circuit board tester (726.684-110; 117,000 jobs nationally).

[AR 11-20].

When the Appeals Council denied Ms. Kratzer's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Kratzer contends that the ALJ improperly discounted the weight he gave to her treating neurologist, Dr. Hilburn. The ALJ noted that Dr. Hilburn estimated that Ms. Kratzer would need to take frequent work breaks and would be absent more than three days a month. According to the testimony of the vocational expert, Mr. Breen, that many absences would eliminate all full-time competitive employment that would be available to her. The ALJ then wrote "these results are inconsistent with the longitudinal record and are inconsistent with his examination findings from April 2017."

The ALJ didn't specify anything in the longitudinal record that is inconsistent with the belief that Ms. Kratzer would miss more than three days of work a month. The ALJ did say that it was also inconsistent with Dr. Hilburn's examination findings from April 2017, but he didn't say how the examination findings from April 2017 were inconsistent with Dr. Hilburn's

3

opinion. Dr. Hilburn listed "migraine headache without aura" and electrocution and nonfatal effects of electric current, sequela" in his assessment. He noted that Ms. Kratzer reported that she continues to struggle to function on a day-to-day basis, that while the CPAP helps, her nighttime sleep is still somewhat interrupted, that her headache frequency is down to having rather severe headaches once or twice a week, and that those headaches are associated with sonophobia and nausea. She reported still having difficulty with mental focusing and organization and that she becomes anxious too easily and periodically shuts down, and that at times she cannot function unless someone is with her to help her. None of those notations are inconsistent with Dr. Hilburn's opinion. Something listed under the heading "review of systems" or "physical examination" might be inconsistent with at least 3 days of absence per month, but someone with medical training would have to explain why it was inconsistent.

    The ALJ gave great weight to the opinion of Dr. Ahmad, the treating neuropsychologist, but his opinion wasn't inconsistent with Dr. Hilburn's opinion that Ms. Kratzer would have at least three absences a month. The ALJ accurately noted that Dr. Ahmad had reported in December 2016 that Ms. Kratzer's depression was stable, that she had little ongoing anxiety, and that she should be applying for work -- those comments are inconsistent with Dr. Hilburn's comment on her depression and anxiety. But Dr. Ahmad's December 2016 report doesn't mention headaches and says, in addition to the statement

4

that she should be applying for work, that "client is unable to work due to injuries sustained while at work 3 years ago."

A treating physician's opinion is entitled to controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2). The ALJ didn't criticize Dr. Hilburn's clinical or laboratory diagnostic techniques, and the administrative record doesn't contain substantial evidence that is inconsistent with Dr. Hilburn's opinion about the impact of Ms. Kratzer's headaches. The ALJ erred in not giving Dr. Hilburn's opinion controlling weight. This error goes beyond the lack of a logical bridge. Because Dr. Hilburn's opinion was entitled to controlling weight, the record compels a finding that Ms. Kratzer was disabled.

Accordingly, the Commissioner's decision is REVERSED and, given the absence in the record of anything to contradict the proposition – entitled to "controlling weight" under the regulations – that Ms. Kratzer's headaches will cost her too many days' work for full-time employment -- the Commissioner is DIRECTED to award Ms. Kratzer disability benefits.

SO ORDERED.

ENTERED:  January 30, 2020

/s/ Robert L. Miller, Jr.
Judge
United States District Court